Case 1:15-cv-00138-LAK-JLC   Document 33   Filed 11/17/15   Page 1 of 12

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/17/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

CAESARS ENTERTAINMENT CORP.,  :   REPORT AND
                              :   RECOMMENDATION
   Plaintiff,                 :
                              :   15-CV-138 (LAK) (JLC)
   -v-                        :
                              :
PENSION PLAN OF THE NATIONAL  :
RETIREMENT FUND & BOARD OF    :
TRUSTEES OF THE NATIONAL      :
RETIREMENT FUND,              :
                              :
   Defendants.                :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Lewis A. Kaplan, United States District Judge:**

Plaintiff Caesars Entertainment Corporation ("Caesars") brings this action against the Pension Plan of the National Retirement Fund ("NRF" or "the Fund") and its Board of Trustees ("Trustees" and, collectively with the NRF, "Defendants") seeking a declaratory judgment that Defendants do not have the power to refuse pension fund contributions made pursuant to the governing collective bargaining agreements in order to cause Caesars' withdrawal from the Fund. Caesars alleges that Defendants threatened to expel it from the Fund in order to trigger a withdrawal liability payment, and that there is no statutory or contractual basis for this action. For the reasons that follow, the Court concludes that Caesars has not exhausted its administrative remedies due to its failure to arbitrate this dispute. Accordingly, the Court recommends that Defendants' motion to dismiss the Complaint be granted.

1

## I. BACKGROUND

### A. Facts

The NRF is a multiemployer pension plan governed by a Trust Agreement with a Board of Trustees that is divided between employer-appointed and union-appointed trustees. Complaint ("Compl.") (Dkt. No. 1) ¶¶ 2, 3, 29. Pursuant to collective bargaining agreements ("CBAs"), employers make contributions to the Fund. *Id.* at ¶ 14. In 2014, Defendants threatened to expel Caesars and its Five Employers from the Fund in order to trigger approximately $480 million of withdrawal liability.[1] *Id.* at ¶ 28.[2] Neither Caesars nor the Five Employers has sought to terminate its contribution obligations, and they do not want to be expelled. *Id.* at ¶ 17.

---

[1] Plaintiff Caesars owns 89% of the issued and outstanding shares of non-party Caesars Entertainment Operating, Inc. ("CEOC"). CEOC owns 100% of the issued and outstanding shares of four of the non-party Employers: (1) Bally's Park Place, Inc. d/b/a Bally's Hotel and Casino; (2) Boardwalk Regency Corporation d/b/a Caesars Atlantic City; (3) Chester Downs & Marina, LLC d/b/a Harrah's Philadelphia and (4) Parball Corporation. Plaintiff Caesars owns 100% of the issued and outstanding shares of non-party Caesars Entertainment Resort Properties, Inc. ("CERP"). CERP owns 100% of the issued and outstanding shares of the non-party Employer Harrah's Operating Company, Inc. d/b/a Harrah's Atlantic City Casino and Hotel. Compl. ¶¶ 8-12. These five entities are the Five Employers that contribute to the Fund. *Id.* at ¶ 14. Plaintiff Caesars is the entity that would be liable if this withdrawal liability is triggered. *Id.* at ¶ 18.

[2] The Complaint was filed on January 8, 2015. At that time, Defendants had not yet expelled Caesars from the Fund. However, subsequently, Defendants did expel Caesars. *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl. Mem.") (Dkt. No. 24) at 7 n.3 ("Subsequent to the commencement of this action, the Defendants purported to expel the Five Employers from the NRF, and, of course, the Five Employers, the Plaintiff and others contest the lawfulness of such purported expulsion.").

Caesars alleges that the Trust Agreement does not authorize Defendants to refuse contributions from an employer in order to cause an involuntary withdrawal. *Id.* at ¶ 30. In addition, to the extent there may have been an amendment to the Trust Agreement without Caesars' knowledge, it alleges that Section 4214 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1394(b), requires pension plans to apply rules uniformly to employers. *Id.* at ¶ 32. Caesars argues that because Defendants have never refused payments from another employer, their refusal to accept contributions from Caesars would violate Section 4214. *Id.* at ¶ 33. Further, Caesars contends that its expulsion from the Fund would not be in the Fund's best interest because it would foreclose future payments to the Fund from an entity that constitutes approximately 10% of its future contribution base. *Id.* at ¶ 34.

### B. Procedural History

Caesars filed its Complaint on January 8, 2015 seeking a declaratory judgment "finding that the Defendants (i) do not have the authority to refuse contributions made by the members of the Caesars Group pursuant to any of the CBAs and (ii) do not have the authority or power to take any action that would cause the involuntary withdrawal of any member of the Caesars Group from the NRF." Compl. at page 10 (WHEREFORE Clause (a)). On July 2, 2015, Defendants moved to dismiss this action for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1). Defendants' Notice of Motion to Dismiss for Lack of Jurisdiction (Dkt. No. 20); Defendants'

Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") (Dkt. No. 21).[3] In moving to dismiss, Defendants argued that Caesars cannot avail itself of this Court's jurisdiction until it has exhausted ERISA's arbitration mechanism. Caesars opposed this motion on July 30, 2015. Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl. Mem.") (Dkt. No. 24). Defendants replied in further support of their motion on August 13, 2015. ("Def. Reply") (Dkt. No. 25). This motion is before me pursuant to the order of reference dated January 21, 2015. (Dkt. No. 3).

## II. DISCUSSION

### A. Applicable Standards

Under Rule 12(b)(1), a court must dismiss an action where it lacks subject matter jurisdiction. In doing so, the court must accept as true all facts alleged in the complaint, but jurisdiction must be affirmatively demonstrated. *See, e.g., Nat. Credit Union Admin. Bd. v. HSBC Bank USA Nat. Ass'n*, No. 15-CV-2144 (SAS), 2015 WL 4429265, at *2 (S.D.N.Y. July 20, 2015) ("In considering a motion to dismiss for lack of subject matter jurisdiction, '[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'") (quoting *Morrison v. Nat. Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

---

[3] Defendants' Notice of Motion only includes a reference to Rule 12(b)(1) as the basis for the motion to dismiss. In their memorandum of law, however, Defendants cite to Rule 12(b)(6) as an alternative basis for dismissal on exhaustion grounds. Def. Mem. at 4, n.3.

4

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Here too the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *See, e.g., Nwozuzu v. United States*, No. 14-CV-8589 (LGS), 2015 WL 4865772, at *3 (S.D.N.Y. Aug. 12, 2015) ("On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party.") To survive dismissal, the plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### B. Exhaustion of Administrative Remedies

In moving to dismiss, Defendants argue that 29 U.S.C. § 1401(a)(1) requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title . . . shall be resolved through arbitration." Def. Mem. at 4-5 (internal citations omitted). According to Defendants, this action involves a dispute that falls within these enumerated provisions, thus subjecting it to mandatory arbitration and requiring dismissal of this action. Specifically, Section 1383 defines a complete withdrawal from a plan as "when an employer—(1) permanently ceases to have an

obligation to contribute under the plan," and Section 1392 defines "obligation to contribute" as "arising—(1) under one or more collective bargaining (or related) agreements . . . ." *Id.* To support their argument that this action involves these provisions, Defendants point to the language of the Complaint itself, which alleges that "[a]llowing the Defendants or any of them to expel members of the Caesars Group . . . would be in direct violation of ERISA §§ 404, 4203, and 4212, 29 U.S.C. §§ 1104, <u>1383, and 1392</u>." Def. Reply at 1 (citing Compl. ¶ 48) (emphasis added).[4]

Caesars, however, contends that this exhaustion requirement does not constitute a bar to federal jurisdiction, but rather is a prudential matter within the Court's discretion. According to Caesars, to determine whether the dispute should be arbitrated, the Court must consider whether: (1) the dispute involves a strictly legal question, as opposed to a factual question or one involving contract interpretation; (2) submitting the dispute to arbitration would promote judicial economy; and (3) even if the issue is one of statutory interpretation, whether it should still be arbitrated if it falls within Sections 1381 to 1399. *See* Pl. Mem. at 4

---

[4] Defendants also argue that Caesars does not have standing to assert a violation of ERISA Section 404(a)(1), which provides that Trustees of the Fund "shall discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries." Def. Mem. at 6 (citing 29 U.S.C. § 1104(a)(1)). However, Caesars makes clear that it is not bringing a free-standing claim alleging that the Trustees are breaching their fiduciary duties. *See* Pl. Mem. at 10. Instead, Caesars' argument centers on the fact that the Trustees' fiduciary obligations do not provide them with the authority to expel a contributing employer or refuse to accept contributions. In other words, Caesars claims that the Trustees have no authority, whether it be through ERISA, the Trust Agreement, or their fiduciary duties, to expel an employer or refuse its contributions. Therefore, the Court will not address whether Caesars has standing to bring a claim pursuant to Section 404(a)(1).

(citing *T.I.M.E.-DC, Inc. v. Mgmt.-Labor Welfare & Pension Funds, of Local 1730 Longshoremen's Ass'n.*, 756 F.2d 939, 945 (2d Cir. 1985)).

The Court agrees with Caesars that the arbitration provision is not a categorical bar to this Court's jurisdiction. As the Second Circuit has observed, "this and other circuits have held that the arbitration provisions . . . do not constitute a bar to federal jurisdiction. Rather, the requirement of exhaustion of administrative remedies in this context is a prudential matter within our discretion." *T.I.M.E.-DC*, 756 F.2d at 945; *see also Bd. of Trustees of the Local Union 373 United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. Local 373 Benefit Funds v. T.M Brennan Contractors, Inc.*, No. 12-CV-6433 (NSR), 2015 WL 221062, at *5 (S.D.N.Y. Jan. 14, 2015) ("The arbitration requirement is considered an exhaustion of administrative remedies requirement."); *Bowers v. Andrew Weir Shipping, Ltd.* 810 F. Supp. 522, 529 (S.D.N.Y. 1992) ("The arbitration provision of the MPPAA constitutes an exhaustion of administrative remedies requirement."); *ILGWU Nat. Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 886 (2d Cir. 1988) (characterizing requirement as one of exhaustion).

Nonetheless, courts have been reluctant to intrude on the arbitrator's domain given Congress's express desire to have disputes arbitrated. *See, e.g. United Ass'n of Journeymen*, 2015 WL 221062, at *5 ("It has been said that '[a]rbitration reigns supreme . . . ") (quoting *Trustees of the Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mech. Inc.*, 909 F.2d 1379, 1385 (10th Cir. 1990)). Courts have consistently concluded that disputes of this kind only avoid arbitration if they implicate a

constitutional question or a matter of statutory interpretation. *See, e.g., NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc.*, No. 12-CV-2506 (PAC), 2013 WL 1234957, at *3 (S.D.N.Y. Mar. 26, 2013) ("[J]udicial resolution is warranted where there are constitutional or statutory interpretation issues"); *The Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc.*, No. 03-CV-4530 (PKC), 2004 WL 67480, at *5 n.5 (S.D.N.Y. Jan. 15, 2004) ("The Second Circuit has held that, in limited circumstances, a matter need not be arbitrated when the only disputes implicate constitutional questions or a matter of statutory interpretation outside the range of issues that Congress directed to arbitration.") (citing *New York State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co.*, 848 F.2d 20, 22 (2d Cir. 1988)); *Nat. Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp.*, 938 F. Supp. 2d 361, 368 (E.D.N.Y. 2013) (same) (citing *New York Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 645 (2d Cir. 2005)).

Caesars argues that the present dispute involves a purely legal determination. Specifically, "[t]he plain terms of ERISA either authorize the Defendants to take the action they threatened to take [and later completed]— refus[ing] to accept any contribution from the Five Employers made pursuant to their respective CBAs and thus expel[ling] the Five Employers from the NRF—or they do not." Pl. Mem. at 5. However, as Defendants contend, the Trust Agreement can also empower it to decline payments and expel Caesars. Def. Reply at 3-7; *see, e.g., Borntrager v. Cent. States. Se. & Sw. Areas Pension Fund*, 577 F.3d 913, 920-21

8

(8th Cir. 2009) (fund had contractual authority to expel employer); *Fort Transfer Co., Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, No. 06-C-3529 (WRA), 2007 WL 707545, at *7 (N.D. Ill. Mar. 2, 2007) (same); *DiGiovannantonio v. Local 153 Pension Fund*, No. 91-CV-7172 (LHP), 1993 WL 37514, at *3 (E.D. Pa. Feb. 11, 1993) ("Courts have interpreted nearly identical language in a fund's trust agreement to confer authority upon the trustees to reject contributions negotiated pursuant to collective bargaining agreements in order to protect the fund."). The Complaint highlights the centrality of the Trust Agreement to this dispute when it alleges: "[t]he Trust Agreement does not grant the NRF or the Trustees the right or authority to refuse contributions from an employer with a collectively bargained obligation to contribute to the NRF and cause an involuntary withdrawal." Compl at ¶ 30. Whether the Trust Agreement grants Defendants this power or not is a matter of contract interpretation.

Therefore, this issue is not only a question of statutory interpretation, but also one of contractual interpretation, which courts have determined should be subject to arbitration. *See, e.g.*, *ILGWU*, 846 F.2d at 886 ("Here, issues of fact—such as, what contract obligations did the Corporation agree to and how did the Corporation conduct its affairs with respect to the union and the Fund—and issues of contract interpretation pervade the Corporation's argument."); *cf. T.I.M.E.-DC*, 756 F.2d at 945 ("[T]here are no questions of fact or issues of contract interpretation to resolve. Thus 'an arbitrator skilled in pension and labor matters would have no

superior expertise to offer.'") (quoting *I.A.M. Nat. Pension Fund Benefit Plan C v. Stockton TRI Indus.*, 727 F.2d 1204, 1210 (D.C. Cir. 1984)).

Further, even if this dispute was purely a matter of statutory interpretation, it relates to 29 U.S.C. §§ 1383 and 1392, thus still requiring it to be arbitrated. *See ILGWU*, 846 F.2d at 886 ("Moreover, the issues of statutory interpretation raised by the Corporation largely involve interpretations under sections 1381 through 1399, interpretations which we believe Congress envisioned would be made by the arbitrator in the first instance."). Section 1383 provides that a "complete withdrawal from a multiemployer plan occurs when an employer—(1) permanently ceases to have an obligation to contribute under the plan . . . ." Here, the primary question is whether a complete withdrawal from the plan has occurred, which is the very issue addressed by §§ 1383 and 1392.

Therefore, the Court concludes that this dispute should be submitted to arbitration, as it involves issues of contract interpretation, and any issues of statutory interpretation that do exist involve those provisions of ERISA that fall within an arbitrator's purview. Even if the Court were to consider judicial economy, it too would weigh in favor of arbitration given the factual issues in dispute—whether the Trust Agreement permits Defendants to expel Caesars from the Fund—which are better suited for an arbitrator who is deeply familiar with ERISA and these types of agreements. *See ILGWU Nat. Ret. Fund v. Smart Modes of Cal., Inc.*, 735 F. Supp. 103, 107 (S.D.N.Y. 1990) ("Since the arbitration of these matters

will likely lead to the application of superior expertise, the . . . issue is controlled by the statutory direction to resort initially to arbitration.").

## III. CONCLUSION

For the foregoing reasons, I recommend that Caesars' Complaint be dismissed for failure to exhaust its administrative remedies.[5]

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985);

---

[5] Though Defendants originally argued for dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, a plaintiff's failure to exhaust administrative remedies is not jurisdictional, and therefore, is more properly raised under Rule 12(b)(6). *See, e.g., Petyan v. New York City Law Dept.*, No. 14-CV-1434 (GBD) (JLC), 2015 WL 1855961, at *2 n.4 (S.D.N.Y. Apr. 23, 2015), *adopted by*, 2015 WL 410841 (S.D.N.Y. July 2, 2015). Because Defendants also moved for dismissal under Rule 12(b)(6), the Court should grant the motion on that ground. *See* Def. Mem. at 4 n.3.

11

*Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: November 17, 2015
      New York, New York

                                            JAMES L. COTT
                                           United States Magistrate Judge